DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Vito Gironda Construction, Co. ("Vito"), appeals from the order of the Summit County Court of Common Pleas, granting Plaintiff-Appellees, Harrison Edwards' and Richard Edwards' (collectively "the Edwards"), motion to enforce settlement. This Court dismisses the appeal.
 I {¶ 2} At four years of age, Harrison Edwards climbed on a piece of construction equipment left on the street outside of his home. The equipment toppled over and crushed Harrison's foot, causing him serious physical injury. On March 2, 2007, Harrison's father, Richard Edwards, brought a negligence suit against Vito on Harrison's behalf. Although Vito admitted to engaging in a road construction project outside the Edwards' home, Vito denied owning or leaving the equipment on which Harrison injured himself. Vito filed a counterclaim *Page 2 
against Richard and a third-party complaint against Michelle Edwards, Harrison's mother, for negligent supervision.
 {¶ 3} After discovery commenced, the trial court referred the parties to mediation. On January 18, 2008, the parties' mediator filed a status report with the court indicating that the parties had settled and that the Edwards would file an entry dismissing their case with prejudice. The Edwards never filed the entry.
 {¶ 4} On January 22, 2008, Vito sent a confirmation letter to the Edwards. The letter confirmed that the parties had agreed on a $40,000 total settlement amount with a portion of that amount to be invested in an annuity purchased by Vito's insurer. As to the annuity, the letter provided as follows:
 "Once you know the total amount of the settlement that is to be invested in the annuity, please contact [us]. [We] have included a copy of the annuity proposed at the mediation for your information. Please be advised that the disbursement intervals and amounts can be changed to suit Harrison's individual needs."
The annuity "proposed at the mediation" invested $14,000 of the $40,000 total settlement into the annuity and paid the following benefits on the following dates: (1) $10,000 on April 27, 2019; (2) $20,000 on April 27, 2020; (3) $30,000 on April 27, 2021; and (4) $40,000 on April 27, 2022. Accordingly, the annuity proposed at the mediation paid out a total of $100,000 in benefits.
 {¶ 5} On February 7, 2008, the Edwards sent Vito a letter indicating that they decided to fund Harrison's annuity with $28,000 instead of $14,000. The letter requested that Vito recalculate the annuity's benefit payouts based on that amount. After receiving the Edwards' letter, Vito realized that it had miscalculated the annuity benefits payments on the $14,000 amount that it had "proposed at the mediation." Vito notified the Edwards of its miscalculation and sent them two revised calculations. The first calculation proposed funding the annuity in the *Page 3 
amount of $14,000 with a total benefits pay out of $26,468.52. The second calculation proposed funding the annuity in the new amount of $28,000 with a total benefits pay out of $50,237.08. The Edwards viewed Vito's response as an attempt to back out of the settlement agreement.
 {¶ 6} On April 2, 2008, the Edwards filed a "motion to re-open case and enforce settlement agreement." Vito responded, arguing that while the parties agreed on a $40,000 settlement amount, they never agreed on the amount that would fund Harrison's annuity or the annuity's ultimate payout amount. On June 17, 2008, without holding a hearing, the trial court granted the Edwards' motion to enforce the settlement.
 {¶ 7} Vito appeals from the trial court's order and raises two assignments of error for our review.
 II Assignment of Error Number One "THE TRIAL COURT IMPROPERLY GRANTED APPELLEES['] MOTION TO ENFORCE SETTLEMENT WITHOUT HOLDING AN EVIDENTIARY HEARING[.]"
 Assignment of Error Number Two "THE TRIAL COURT IMPROPERLY GRANTED APPELLEES' MOTION TO ENFORCE SETTLEMENT AS THERE WAS NO MEETING OF THE MINDS REGARDING THE AMOUNT OF MONEY TO FUND AND THE ULTIMATE PAY OUT OF, APPELLEE HARRISON EDWARDS' ANNUITY."
 {¶ 8} In its first assignment of error, Vito argues that the trial court erred in failing to hold an evidentiary hearing on the Edwards' motion to enforce settlement. In its second assignment of error, Vito argues that the court erred in granting the Edwards' motion to enforce settlement because the parties never agreed what percentage of the $40,000 total settlement would fund Harrison's annuity. We cannot address either argument because Vito has not appealed from a final judgment. *Page 4 
 {¶ 9} The Ohio Constitution limits an appellate court's jurisdiction to the review of final judgments of lower courts. Section 3(B)(2), Article IV. For a judgment to be final and appealable, the requirements of R.C. 2505.02 must be satisfied. Chef Italiano Corp. v. Kent StateUniv. (1989), 44 Ohio St.3d 86, 88. A judgment that "does not dispose of all the claims between all the parties, and does not contain an express determination that there is no just reason for delay, see Civ. R. 54(B), it is not a final, appealable order." Davis v. Chrysler Corp. (Apr. 12, 2000), 9th Dist. No. 19525, at *1. Additionally, a judgment is not final if it "fails to speak to an area which was disputed, uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court." Harkai v. ScherbaIndustries, Inc. (2000), 136 Ohio App.3d 211, 216, quoting Walker v.Walker (Aug. 5, 1987), 9th Dist. No. 12978, at *2. A matter must be "disposed of such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined." Landis v. Associated Materials, Inc., 9th Dist. No. 06CA0005, 2006-Ohio-5060, at ¶ 8, quoting Bergin v. Berezansky, 9th Dist. No. 21451, 2003-Ohio-4266, at ¶ 5. We have previously concluded that we lacked jurisdiction over a trial court's order granting a motion to enforce a settlement in both of the foregoing finality scenarios. SeeDavis, at *1 (concluding that order enforcing settlement was not final because the order failed to dispose of outstanding claims against one of the parties and did not include Civ. R. 54(B) language); Landis at ¶ 7-15 (concluding that order enforcing settlement was not final because the order did not set forth the exact terms of the settlement and made it impossible to determine which of two possible agreements the trial court was seeking to enforce).
 {¶ 10} Our review of the trial court's order leads us to conclude that it is not final for both of the reasons set forth above. First, the order fails to fully dispose of all the claims and *Page 5 
parties below and does not include Civ. R. 54(B) language. SeeDavis, at *1. The Edwards never filed a dismissal of their claims against Vito after the parties indicated that they had reached a settlement agreement. Moreover, Vito never dismissed its counterclaim against the Edwards or its separate claim for negligent supervision, brought through a third party complaint, against Michelle Edwards. The trial court's order does not reference either the Edwards' or Vito's claims. It simply grants the Edwards' motion to enforce settlement. As such, the trial court never entered judgment as to all the parties and their claims so as to dispose of the entire action. Because the order leaves outstanding claims it does not constitute a final, appealable order.
 {¶ 11} Second, the order fails to fully determine the rights and obligations of the parties in an unambiguous manner. See Landis
at ¶ 7-15. The trial court's order reads, in relevant part, that:
 "Therefore, a valid settlement agreement exists as the parties agreed to the essential terms of a $40,000 settlement, a portion of which would go into a structured annuity funded by [Vito's insurer], and that [the Edwards] would provide [Vito] with the specific amount of the annuity. [The Edwards] timely submitted this amount and [Vito] provided a revised payout. Upon consideration the Court finds the [Edwards'] motion well taken. Therefore, [the Edwards'] Motion to Enforce Settlement Agreement is GRANTED." (Emphasis added.)
It is entirely unclear what the trial court meant by using the phrase "this amount" and granting the Edwards' motion. The court appears to refer to the Edwards having timely submitted "this amount" at some point after the mediation. This would lead the reader to believe that the court was referring to the Edwards' February 7, 2008 letter requesting that Vito allocate $28,000 to the annuity fund. Yet, this is not the relief that the Edwards sought in their motion to enforce the settlement. The Edwards' motion to enforce asked the court to enforce the $14,000 annuity arrangement (with the $100,000 total benefits pay out) that Vito offered in the mediation and its January 22, 2008 letter to the Edwards. This would lead the reader to believe that by granting *Page 6 
the Edwards' motion, the court meant to hold Vito to the $14,000 amount with the $100,000 miscalculated benefits pay out, not the $28,000 annuity arrangement that the Edwards requested in their February 7, 2008 letter. Further, it is of no help that the trial court referred to Vito having "provided a revised payout" after the Edwards submitted "this amount" because Vito provided the Edwards with revised payouts for both the $14,000 annuity option (with the corrected $26,468.52 total benefits pay out) and the $28,000 annuity option. Accordingly, it is unclear what amount the trial court believed that the parties had agreed upon and meant to enforce when it referred to "this amount."
 {¶ 12} Vito has not appealed from a final, appealable order both because the order fails to dispose of all the claims below and because it employs ambiguous and confusing language that makes it impossible to determine the rights and liabilities of the parties. See Davis, at *1;Landis at ¶ 8. Consequently, we lack jurisdiction to consider Vito's assignments of error.
 III {¶ 13} This Court does not have jurisdiction to consider either of Vito's assignments of error because Vito has not appealed from a final, appealable order. As such, this appeal is dismissed.
Appeal dismissed.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 7 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. Costs taxed to Appellant.
BETH WHITMORE FOR THE COURT
 SLABY, J. CARR, P. J., CONCUR *Page 1